IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ANDRES LUGO,

    Petitioner,

v.                                                                   Civil Action No. **3:17CV801**

**ERIC D. WILSON,**

    Respondent.

## REPORT AND RECOMMENDATION

Andres Lugo, a former[1] federal inmate proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1). In Lugo's § 2241 Petition, he raises the following claim for relief:[2]

    Claim One:    The Bureau of Prisons' ("BOP") "statutory interpretation of 18 U.S.C.[] § 3621(e)(2)(B)[[3]] is in error as a matter of law." (§ 2241 Pet. 6.)

Respondent has filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 5),[4] asserting, *inter alia*, that Lugo's claim lacks

---

[1] When Lugo initiated this action, he was incarcerated at FCI Petersburg Medium. (§ 2241 Pet. 1.) Subsequently, after initiating this action, Lugo filed a Notice of Change of Address, indicating that he had been released from incarceration. (ECF No. 9.)

[2] The Court employs the pagination assigned by the CM/ECF docketing system to Lugo's submissions. The Court corrects the capitalization and punctuation in the quotations from Lugo's submissions.

[3] As relevant here, 18 U.S.C. § 3621(e)(2)(B) provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [substance abuse] treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

[4] Respondent styled his motion as a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. (ECF No. 5.) Because the Court relies upon the exhibits submitted by the parties, the Court will determine whether summary judgment is appropriate under Rule 56 of the Federal Rules

merit. Lugo has responded. (ECF No. 8.) For the reasons set forth below, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED and the § 2241 Petition be DENIED because Lugo's claim regarding the BOP's statutory interpretation of 18 U.S.C. § 3621(e)(2)(B) is without merit.

A.  **Summary Judgment Standard**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing

---

of Civil Procedure, and declines to consider Respondent's motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As such, the Court will refer to Respondent's motion as a Motion for Summary Judgment.

2

*Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Sandra K. Long, a Paralegal Specialist at the BOP's Designation and Sentence Computation Center in Grand Prairie, Texas ("Long Decl.," ECF No. 6–1); (2) a copy of a Change Notice to BOP Program Statement 5331.02, Early Release Procedures Under 18 U.S.C. § 3621(e), with an effective date of May 26, 2016 (*id.* Attach. 1, ECF No. 6–2, at 2); (3) a copy of BOP Program Statement 5331.02, Early Release Procedures Under 18 U.S.C. § 3621(e), with an effective date of March 16, 2009 (*id.* Attach. 1, ECF No. 6–2, at 3–15); (4) a copy of BOP Program Statement 5162.05, dated March 16, 2009 (*id.* Attach. 2, ECF No. 6–3); and, (5) a copy of Lugo's Request for § 3621(e) Offense Review form, dated July 27, 2016 (*id.* Attach. 3, ECF No. 6–4).

Lugo signed his § 2241 Petition under penalty of perjury. (§ 2241 Pet. 9.) Lugo also submitted exhibits with his § 2241 Petition. (ECF No. 1–1, at 1–10.) The Court will consider these submissions in determining the propriety of the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c). Additionally, Lugo submitted a Response in Opposition, responding to Respondent's motion, and the Court will consider Lugo's arguments in support of his position. (ECF No. 8.)

3

However, the Court notes that in Lugo's Response in Opposition, in addition to responding to Respondent's motion, it appears that Lugo seeks to add a vague, new "counter cross-claim," regarding alleged "selective enforcement of regulations and [Residential Drug Abuse Program ("RDAP")] directives." (*Id.* at 7.) To the extent that Lugo seeks to add vague, new claims in his Response in Opposition, the Court notes that Lugo cannot add new claims by a passing reference in this submission. *See Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Therefore, to the extent that Lugo seeks to add any new claims in his Response in Opposition,[5] the new claims will receive no further consideration in this action.

---

[5] In Lugo's Response in Opposition, he contends that "[t]he enrollment of inmates into the RDAP . . . and the discretion given to the BOP whether to award sentence reductions . . . equals selective enforcement as to the equal treatment of similarly situated prisoners, thus, a violation of the equal application of law by virtue of the Fourteenth Amendment." (ECF No. 8, at 4.) As set forth herein, Lugo cannot add new claims by a passing reference in his Response in Opposition. Moreover, to the extent that Lugo attempts to raise any new claims in his Response in Opposition, the Court notes that, even if such claims were properly before the Court, the allegations are too vague to allege any new claims. That is, even if the Court were to liberally construe Lugo's vague allegations regarding "selective enforcement" of RDAP directives as raising an equal protection claim, such a claim fails. The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Here, Lugo fails to identify any similarly situated prisoner who was treated differently with regard to RDAP early release. (*See* ECF No. 8, at 3–8.) Because Lugo's vague, conclusory allegations fail to suggest that (i) he is similarly situated to other inmate(s), or (ii) that any alleged differing treatment resulted from intentional discrimination, Lugo has not plausibly alleged a violation of his Fourteenth Amendment right to equal protection. (*See id.*)

4

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Lugo.

**B.     Summary of Pertinent Facts**

When Lugo filed his § 2241 Petition, he was "serving a 46-month sentence imposed by the United States District Court for the Southern District of Florida due to his conviction for Conspiracy to Violate the RICO [Racketeer Influenced and Corrupt Organizations] Act, in violation of 18 U.S.C. § 1962(d)." (Long Decl. ¶ 2.) In her Declaration, Ms. Long states,

> In this case, the offense of conviction is a conspiracy, and the underlying offense is Robbery, in violation of 18 U.S.C. § 1951(a). . . .
> . . . [T]he United States Probation Officer recommended a five-level SOC [Specific Offense Characteristic] enhancement . . . because a firearm was brandished or possessed. Moreover, in the Judg[]ment and Commitment Order's Statement of Reasons, the sentencing court adopted the PSR [Pre-Sentence Report] "without change," thereby affirming and adopting the recommended five-level SOC enhancement.

(*Id.* ¶¶ 12–13.)

While Lugo was serving his sentence at FCI Petersburg, the Drug Abuse Program Coordinator ("DAPC") requested that Lugo receive an offense review pursuant to 18 U.S.C. § 3621(e) to determine whether Lugo was eligible for early release should he successfully complete the BOP's RDAP. (*See id.* Attach. 3, ECF No. 6–4, at 2.) To complete the offense review, Lugo's offense records were submitted to the BOP's Designation and Sentence Computation Center ("DSCC"). (*Id.* ¶¶ 1, 4, 9.) In completing the offense review,

> the DSCC Legal Department determines whether an inmate is precluded from receiving early release after reviewing the inmate's DSCC-maintained electronic sentence computation file, which includes the Judgment and Commitment Order[,] . . . Statement of Reasons[,] . . . Pre-Sentence Investigation Report[,] . . . and any other relevant sentencing documentation. The final decision regarding 18 U.S.C. § 3621(e) eligibility is then transmitted back to the requesting DAPC.

(*Id.* ¶ 4.)

Pursuant to BOP policy, DSCC staff concluded that, upon completion of RDAP, Lugo would not qualify for early release under 18 U.S.C. § 3621(e) because, in light of the five-point firearm sentencing enhancement, his conviction for Conspiracy to Violate the RICO Act, with an underlying offense of Robbery, (i) "has as an element, the actual, attempted, or threatened use of physical force against the person or property of another," (ii) "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives," (iii) "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another," and (iv) "is an attempt, conspiracy, or other offense which involved an underlying offense to commit any precluding offense." (*Id.* Attach. 3, ECF No. 6–4, at 2 (citing 28 C.F.R. § 550.55(b)(5)(i)–(iii), (6)).) DSCC staff explained:

> Conspiracy to Violate the RICO Act (18 U.S.C. § 1962(d)) is precluding pursuant to 28 C.F.R. § 550.55(b)(5)(i), (ii), (iii) & (6) and pursuant to Section 4.d of PS [Program Statement] 5162.05, as the racketeering activity consisted of an underlying offense in violation of 18 U.S.C. § 1951 and an accompanying 5-level SOC enhancement for the use of a firearm which is a precluding offense pursuant to PS 5162.05, Section 4.b. DSCC legal staff reviewed the inmate's current offense(s) under the current version of 28 C.F.R. § 550.55(b), implemented on May 26, 2016.

(*Id.* Attach. 3, ECF No. 6–4, at 2.) Plaintiff then appealed the BOP's determination that he was ineligible for early release and exhausted his administrative remedies on the subject. (*See* § 2241 Pet. 2–4, 6; *see also* ECF No. 1–1, at 3–10.)

On December 6, 2017, the Court received the instant § 2241 Petition from Lugo. (§ 2241 Pet. 1–9.) As relief, Lugo requests that he "be granted 12 months early release for completing the RDAP," explaining that he "completed the program on May 5, 2017." (*Id.* at 8.) On May 15,

2018, Lugo submitted a Notice of Change of Address to the Court, indicating that he had been released from incarceration. (ECF No. 9.)[6]

**C.  Analysis**

Title 18 U.S.C. § 3621(e)(2)(B) provides that federal prisoners convicted of nonviolent offenses who remain in custody after the completion of treatment in RDAP may receive a reduction in their sentences of up to one year. 18 U.S.C. § 3621(e)(2)(B). Here, Lugo contends that the BOP's statutory interpretation of 18 U.S.C. § 3621(e)(2)(B) "is in error as a matter of law." (§ 2241 Pet. 6.) To provide context for Lugo's claim, the Court briefly discusses general administrative law principles.

**1.  Judicial Review of an Agency's Interpretation of its Statutory Grant of Power and the Manner in which an Agency Exercises Power Granted by Statute**

"Administrative agencies such as the BOP exist because 'in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives.'" *Townes v. Stansberry*,

---

[6] Article III, clause 2, of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III, cl. 2. The doctrines of ripeness and mootness are "doctrines that cluster about Article III" of the United States Constitution. *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 220–21 (4th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). As to mootness, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted). Further, "[i]f intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[] [is] powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983). Here, on May 15, 2018, Lugo notified the Court that he had been released from incarceration. (ECF No. 9.) However, although Lugo notified the Court that he had been released from incarceration, neither party has supplemented the record before the Court regarding whether Lugo remains on supervised release. Because the parties did not supplement the record before the Court, it is unclear whether Lugo is on supervised release. Therefore, despite Lugo's release from incarceration, the Court analyzes the merits of Lugo's claims. *See Townes v. Jarvis*, 577 F.3d 543, 549 n.3 (4th Cir. 2009) (discussing that a habeas petition is not rendered moot if it is possible that a favorable decision might result in a shorter period of supervised release).

No. 3:08CV526, 2009 WL 3175380, at *3 (E.D. Va. Sept. 30, 2009) (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). In reviewing agency-created policy,

> Courts initially should determine whether Congress granted to the agency the necessary discretion. Courts must first examine the statute to decide "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." If Congress has left the matter to the agency's discretion by enacting a statute that "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). If the agency's interpretation "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design," such interpretation "is entitled to deference." *Id.* (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins., Co.*, 513 U.S. 251, 257 (1995)).

With respect to judicial review of the manner in which an agency exercises power granted by statute, "[a]n agency with discretion to issue a particular regulation may nevertheless violate the APA [Administrative Procedure Act] because of the manner in which [the regulation] was promulgated." *Id.* at *4 (citing 5 U.S.C. § 500 *et seq.*). In conducting such a review, "[t]he APA requires courts to set aside rules that are 'arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). Such a review is "narrow" and "[requires] that an agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" *Id.* (alteration in original) (quoting *FCC v. Fox Television Stations, Inc.*, 509 U.S. 502, 513 (2009)). Specifically, the agency's explanation must show "a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "If the agency has exercised its reasoned judgment, a reviewing 'court is not to substitute its judgment for that of the agency.'" *Id.* (citations omitted).

### 2. Merits of Lugo's Claim

In Lugo's § 2241 Petition, he contends that the BOP's "statutory interpretation of 18 U.S.C.[] § 3621(e)(2)(B) is in error as a matter of law." (§ 2241 Pet. 6). Lugo argues that "[he] was convicted under 18 U.S.C. § 1962(d), which is a non-violent offense," and "[t]hough [he] ha[s] a sentencing enhancement for firearms, the determination on whether to reduce a defendant's sentence should be based on consideration of his prior convictions rather than sentencing or sentencing factors." (*Id.* at 7.) Although not specifically articulated in Lugo's instant § 2241 Petition, as support for this assertion, Lugo appears to rely on the decision of the United States Court of Appeals for the Ninth Circuit in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008). (*See* ECF No. 8, at 2; *see also* § 2241 Pet. 3, 6.)

As an initial matter, the Ninth Circuit's *Arrington* decision does not control the outcome in the present case because Lugo was not sentenced nor incarcerated in a district within the Ninth Circuit. *See Whitaker v. Stansberry*, No. 3:08CV662, 2009 WL 3762320, at *3 (E.D. Va. Nov. 9, 2009) (alteration in original) ("[A] federal court of appeals's decision is only binding within its circuit." (quoting *Va. Soc'y Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 393–94 (4th Cir. 2001))); (*see* § 2241 Pet. 1.) Further, in *Arrington*, "the Ninth Circuit concluded that the BOP failed to explain adequately the purpose for issuing its new rule categorically excluding persons convicted of firearms charges from eligibility for early release, rendering the rule arbitrary and capricious under the APA." *Whitaker*, 2009 WL 3762320, at *4 (citing *Arrington*, 516 F.3d at 1116). However, after the *Arrington* decision, the BOP "promulgated a substantively identical rule," which is found at 28 C.F.R. § 550.55,[7] and the BOP invoked public safety as the rationale

---

[7] As is relevant to Lugo's claim, 28 C.F.R. § 550.55 provides that certain inmates are ineligible for early release, including those who have a current felony conviction for:

9

for issuing the new rule. *Id.* (citation omitted). Specifically, the rule included the following statement of purpose:

> There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." [531 U.S. 230, 240 (2001)]. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.
>
> . . . [T]he specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

*Id.* (quoting 74 Fed. Reg. 1892–01, 1895 (Jan. 14, 2009)).

As set forth above, Lugo contends that the BOP's statutory interpretation of 18 U.S.C. § 3621(e)(2)(B), which includes the rule set forth in 28 U.S.C. § 550.55, "is in error as a matter of law." (§ 2241 Pet. 6.) Lugo's § 2241 Petition does not present a novel claim. Courts in this district have found that "[t]his rule and its explanatory statement clearly satisfied the BOP's obligation to provide a 'rational connection between the facts found and the choice made.'" *Savage v. Wilson*, No. 2:13CV578, 2014 WL 1902709, at *5 (E.D. Va. May 8, 2014) (citing *Lopez*,

---

(i) An offense that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another;
(ii) An offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives . . . ; [or,]
(iii) An offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another[.]

28 C.F.R. § 550.55(b)(5)(i)–(iii) (2016). The rule also provides that inmates are ineligible for early release if the inmates "have been convicted of an attempt, conspiracy, or solicitation to commit an underlying offense listed in paragraph (b)(4) and/or (b)(5) of this section," which includes the underlying offense of robbery. *Id.* § 550.55(b)(4)(iii), (6) (2016).

10

531 U.S. at 240); *see Horton v. Wilson*, No. 2:17CV177, 2017 WL 6063080, at *3 (E.D. Va. Nov. 8, 2017), report and recommendation adopted by 2017 WL 6030463 (E.D. Va. Dec. 5, 2017); *Goodwin v. Wilson*, No. 1:17CV269 (AJT/JFA), 2017 WL 2837138, at *2 (E.D. Va. June 30, 2017). Specifically, courts in this district have found that "[p]ublic safety is clearly affected by the significant potential for violence resulting from armed offenders," and "[a]s a result, neither promulgation of the rule, nor applying it to exclude [an inmate] from the discretionary sentence reduction, violate the APA." *Savage*, 2014 WL 1902709, at *5 (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43); *see Horton*, 2017 WL 6063080, at *3, report and recommendation adopted by 2017 WL 6030463 (citation omitted).

Therefore, with respect to the BOP's determination regarding Lugo's eligibility for early release pursuant to 18 U.S.C. § 3621(e)(2)(B), which was based on the rule set forth in 28 C.F.R. § 550.55, the BOP appropriately exercised its discretionary authority to determine that Lugo was ineligible for early release. Specifically, pursuant to BOP policy, Lugo was precluded from early release because of, *inter alia*, (i) his conviction for Conspiracy to Violate the RICO Act, with an underlying offense of Robbery, and (ii) the sentencing court's adoption of the PSR "without change," which included the United States Probation Officer's recommendation of a five-level enhancement "because a firearm was brandished or possessed." (*See* Long Decl. ¶¶ 2, 10–13); *see also* 28 C.F.R. § 550.55(b)(4)–(6) (2016).

In Lugo's Response in Opposition, he argues that

> [he] finds trouble with [the] language [of 28 C.F.R. § 550.55(b)(5)(iii)] as it is similar [to] language that the Supreme Court in [*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018),] struck down as also vague pursuant to "crimes of violence" at § 16 of Title 18. And similarly, such statutory language in the residual clause too was struck down as vague under *Johnson* [*v. United States*, 135 S. Ct. 2551 (2015),] and given retroactivity under *Welch* [*v. United States*, 136 S. Ct. 1257 (2016)].

11

(ECF No. 8, at 5.) In his rambling arguments, it appears that Lugo seeks to extend *Johnson* to invalidate 28 C.F.R. § 550.55(b)(5)(iii),[8] arguing that the language of this regulation is largely similar to the term "violent felony," as set forth in the residual clause, which was invalidated by *Johnson*. (*Id.*) Lugo's argument is misplaced. In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563.[9] In *Welch*, the Supreme Court held that "*Johnson* announced a substantive rule of law that has retroactive effect in cases on collateral review." 136 S. Ct. at 1268. Additionally, in *Dimaya*, an immigration case, the Supreme Court held that the residual clause incorporated into the Immigration and Nationality Act "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." 138 S. Ct. at 1223 (internal quotation marks and citation omitted). At this time, the Supreme Court has not decided that *Johnson* invalidates all statutes or regulations that use language that is similar to the language used in the ACCA's residual clause.

Moreover, Lugo's preclusion from early release under 18 U.S.C. § 3621(e) was based on BOP policy, including the rule in 28 C.F.R. § 550.55, and was not based on a sentence

---

[8] 28 C.F.R. § 550.55(b)(5)(iii) provides that inmates are not eligible for early release if the inmates "have a current felony conviction for: . . . [a]n offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another[.]" 28 C.F.R. § 550.55(b)(5)(iii).

[9] The ACCA provides that

> [i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1). Under the residual clause, the term violent felony had been "defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Johnson*, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(2)(B)).

enhancement under the ACCA or a provision of the Immigration and Nationality Act. (*See* Long Decl. ¶¶ 10–13.) Specifically, in conducting the offense review pursuant to 18 U.S.C. § 3621(e), DSCC staff concluded, *inter alia*, that Lugo was precluded from early release because (i) he was convicted of Conspiracy to Violate the RICO Act, with an underlying offense of Robbery, (ii) he received a five-level enhancement "because a firearm was brandished or possessed" during the offense, and (iii) his offense of conviction "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another." (*See id.*) Pursuant to BOP policy, any one of the above-listed factors would preclude Lugo from receiving early release under 18 U.S.C. § 3621(e). As such, even if the above-listed third factor, which Lugo contends is similar to the invalidated language in the ACCA's residual clause, was not used as a basis for preclusion from early release under 18 U.S.C. § 3621(e), Lugo would still be precluded from early release. Specifically, Lugo would be precluded from early release because the underlying offense for his conspiracy conviction was robbery and, as Lugo concedes, he received a sentence enhancement for use of a firearm during the offense. (*See* Long Decl. ¶¶ 10–13.)

Accordingly, for the reasons set forth above, Claim One lacks merit. The Court finds that neither the promulgation of the BOP's rules nor applying the rules to exclude Lugo from early release pursuant to 18 U.S.C. § 3621(e)(2)(B) is in error as a matter of law. Therefore, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED.

**D.     Conclusion**

Accordingly, it is RECOMMENDED that the Motion for Summary Judgment (ECF No. 5) be GRANTED, Lugo's claims be DISMISSED, and the § 2241 Petition (ECF No. 1) be DENIED.

Lugo is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Lugo and counsel for Respondent.

It is so ORDERED.

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: November 15, 2018
Richmond, Virginia